IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TERREL BLACK, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| v. | ) | |
| | ) | |
| SKINARY APP, INC., | ) | |
| THE SKINARY LLC, and | ) | |
| BIANCA MAXWELL HARRIS, | ) | |
| in her official and individual | ) | |
| capacities | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, TERRELL BLACK, by and through undersigned counsel of record, and brings this, his Complaint for Damages against Defendants SKINARY APP, INC., THE SKINARY LLC, and BIANCA MAXWELL HARRIS, and shows the court as follows:

## PRELIMINARY STATEMENT

1.

1

This is an action for damages arising from a former co-founder Defendants' conduct which constitutes common law fraud, unjust enrichment, quantum meruit, defamation of character, and intentional infliction of emotional distress.

<u>PARTIES</u>

2.

Plaintiff Terrell Black is an individual natural person, United States citizen and resident of the State of Georgia, County of Fulton, situated in the Northern District of Georgia.

3.

Defendant Skinary App Inc. is, upon information and belief a foreign for-profit corporation incorporated in the state of Delaware and headquartered in the state of California., with and principal place of business in Los Angles, California. Defendant Skinary App, Inc. may be served by serving its registered agent for service of process: Legalinc Corporate Services Inc. located at 651 N Broad St Suite 205, Middletown, DE 19709-6402.

4.

Defendant The Skinary LLC is, upon information and belief a foreign limited liability company incorporated in state of Massachusetts and headquartered in the state of California., with its principal place of business in Los Angles California. Defendant

The Skinary LLC, may be served with process by serving its registered agent and co-defendant Bianca Harris at 175 Centre St, 1412 Quincy, MA 02169.

5.

Defendant Bianca Maxwell Harris is domiciled in Los Angeles, California. Defendant Harris is the principal and agent of Defendant Skinary App Inc. and Defendant The Skinary LLC. Defendant Maxwell is an individual who is a citizen of the State of California, and who may be served with process at 6200 Hollywood Blvd Apt 2521 Los Angeles, CA 90028-6375.

6.

Upon information and belief, Defendant Bianca Maxwell Harris is sole principal for Defendants Skinary App, Inc. and The Skinary LLC. Accordingly, all Defendants may be alternatively served with process at 6200 Hollywood Blvd Apt 2521 Los Angeles, CA 90028-6375.

<u>SUBJECT MATTER JURISDICTION</u>

7.

Federal jurisdiction is proper in this Court pursuant to 28 U.S.C.A. § 1332, as one or more parties to this case are citizens of different states. Specifically, as noted above, Plaintiff is a resident of the state of Georgia, while one or more of the named Defendants are citizens of other states as defined by § 1332 (c)(1), and

the amount in controversy, excluding costs and interest, exceeds $75,000.00.

<u>PERSONAL JURISDICTION</u>

8.

This Court has jurisdiction over the person of each of the Defendants regarding Plaintiff's common law fraud claims pursuant to the Georgia Long-Arm statute, O.C.G.A. § 9-10-91, because the Defendants have done acts, including, one or more of the following:

(i) transacted "any business" within the state of Georgia within the meaning of O.C.G.A. § 9-10-91(1);

(ii) committed a tortious act in the state of Georgia within the meaning of O.C.G.A. § 9-10-91(2); or

(iii) conspired with other Defendants, which have themselves done acts sufficient to bring them and their co-conspirators within the long-arm jurisdiction of Georgia courts pursuant to O.C.G.A. § 9-10-91 and applicable law.

9.

The Court has jurisdiction over the person of Defendants respecting Plaintiff's claims for common law fraud claims, and claims for breach of duties of good faith and fair dealing pursuant to the Georgia Long Arm Statute, O.C.G.A. § 9-10-91

4

because Defendants have transacted "any business" in the state of Georgia within the meaning of O.C.G.A. § 9-10-91(1).

10.

Exercising jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice. When Defendants Skinary and Harris solicited, retained, and then benefitted from Plaintiff 's expertise and technology and coding services, they should have anticipated that dispute arising from those contacts could expose them to personal jurisdiction. See Weinstein Grp., Inc. v. O'Neill & Partners, LLC, 415 F. Supp. 3d 1167, 1174 (N.D. Ga. 2019) (When it solicited, retained, and then benefitted from and paid for the services of a Georgia placement services corporation, it should have anticipated that a dispute arising from those contacts could expose it to personal jurisdiction here.) See also Burger King, 471 U.S. at 473, 105 S.Ct. 2174 ("A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

*VENUE:*

11.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. §§ 1391(a)(2) and (b)(2), because a substantial part of the events giving rise to the claim occurred in and around Atlanta, Georgia.

## FACTUAL ALLEGATIONS

### Defendant Harris Fraudulently Pursued and Induced Plaintiff to Join Skinary As Co-Founder and Chief Technology Officer

12.

Plaintiff and Defendant Harris met at a professional conference in November of 2020.

13.

After a series of conversations and emails, the parties agreed that Plaintiff would join "Team Skinary" as a co-founder and Chief Technology Officer.

14.

Defendant provided Plaintiff with several contractual agreements to consummate the parties mutual understanding of the terms of their joint business relationship.

15.

Plaintiff engaged legal counsel to assists with negotiating the best arrangement for him.

16.

However, based on the oral representations made, Plaintiff agreed to begin working without a formal agreement in place with the express understanding that he would be a co-founder and co-owner of Defendants Skinary App, Inc. and The Skinary LLC.

17.

On or around January 7, 2020, Defendant Harris sent an email to Skinary investors, friends, and family announcing, among other things that Plaintiff "Terrell Black has joined as Technical CoFounder & CTO.[1]"

18.

Even before it was announced, Plaintiff had assumed co-founder and CTO responsibilities as early as November 2019.

---

[1] Exhibit A, Email Announcement, January 2020

19.

Defendants heavily relied on Plaintiff's extensive and highly impressive educational background, technology expertise, and professional reputation to pursue and solicit investors for Defendant's beta launch. One of many examples of an investor pitch deck explicitly lists Plaintiff as co-founder.[2]

20.

Over the course of November 2019 to January 10, 2020, Plaintiff worked more than 300 billable hours, which including build custom apps and android technology.

21.

On or around, December 29, 2019, Plaintiff conducted a phone call with Defendant Harris to further negotiate the contract designating him as co-founder.

Defendant Harris Terminated Plaintiff as Co-Founder and Chief Technology Officer of Skinary Without Compensation

22.

On or around January 16, 2020, Defendant Harris terminated Plaintiff via email. In the termination email, Defendant Harris specifically mentioned that there was not an enforceable contract because Plaintiff had not yet signed it.

---

[2] Exhibit B, Skinary App Org Chart

8

23.

At the time of separation, Plaintiff Harris referenced the lack of a signed contract as a basis for not compensating Plaintiff or honoring any of their prior agreements.

Defendant Harris Harassed Plaintiff Regarding Alleged Breach of NDA

24.

Sometime in March 2020, Defendant Bianca Harris began harassing Plaintiff regarding an alleged breach of a NDA.

25.

Specifically, Defendant Harris was demanded that Plaintiff remove all references from the social media and that he had ever been involved with Defendant Skinary App.

26.

Plaintiff had never signed the agreement and sought legal counsel to support him. Counsel made a determination that he had not violated the agreement because he had never signed it.

<u>Defendant Harris Defamed Plaintiff in a December 2023 LinkedIn Post</u>

27.

For the next several years, Plaintiff heard nothing further from Defendant Harris regarding the parties former co-founder business relationship.

28.

On, or around, December 10, 2022, Plaintiff was notified by an internal recruiter for Disney Streaming, advising him of a LinkedIn post accusing him of being a fraud and alleging that Plaintiff was taking credit for and claiming to be a co-founder of Skinary.

29.

Specifically, the post alleged that Plaintiff had never been involved with Skinary and accused him of lying in an attempt to take credit for founding the Skinary App.

30.

The post included a screenshot of Plaintiff's face and LinkedIn bio, which explicitly show on the face of the post that Plaintiff was a current employee at Disney Streaming. Screenshots of the LinkedIn post are reflected here.





31.

As soon as he was made aware, Plaintiff took immediate steps to mitigate the harm to his reputation by contacting LinkedIn and advising them of the false and defamatory nature of the post, particularly the screenshots of his face and LinkedIn bio.[3]

32.

Sadly, LinkedIn failed to remove Plaintiff Harris' defamatory post for several months.

33.

Upon information and belief, the post was not removed until late January 2023, when undersigned counsel requested that LinkedIn remove the post on the basis that it constituted libel.

34.

Plaintiff was contacted by professional and personal friends as well as other Disney Streaming employees about Defendant's post.

35.

Upon information and belief, Defendant Harris LinkedIn post was viewed by thousands of LinkedIn user before it was removed.

---

[3] Exhibit C, Plaintiff Black's Online Harassment Complaint

36.

Because Plaintiff and Defendant Harris were now co-workers, Plaintiff has reason to believe that several of his Disney Streaming co-workers also viewed and commented on the post.

37.

Before it was removed from LinkedIn's website, Defendant Harris' post had been viewed and commented on. Many of the comments were negative and disparaging. A example of which is below:



<u>Defendant Harris Filed a False and Malicious Employee Complaint Against</u>

<u>Plaintiff with Disney Streaming Alleging Criminal Assault</u>

38.

Plaintiff's first day as an Android Engineer with Disney Streaming was first Monday in January 2023.

39.

On January 10, 2023, Plaintiff was contacted by legal counsel for his current employer, Disney Streaming, regarding an employee complaint that had been lodged against him.

40.

Unbeknownst to Plaintiff, his former co-founder, Defendant Harris was also employed by Disney Streaming.

41.

Upon information and belief, when Defendant Harris learned that her former co-founder worked the same place as her, she decided to continue the bullying and harassing that she had perpetrated against him for the last several years. However, this time she took up a level by filing a false and malicious complaint against Plaintiff with Disney Streaming in an attempt to have Plaintiff terminated.

42.

Upon information and belief, Defendant Harris was motivated to do this because she did not want anyone at her current employer to discover her former business dealings.

43.

Defendant Harris complained that plaintiff physically assaulted her at two separate public events associated with the AfroTech conference in November 2022.

44.

On, Tuesday, January 10, 2023, Plaintiff participated in an internal investigation led by Disney Streaming's internal employee relations department investigating Defendant Harris allegations of physical assault.

45.

After conducting a thorough investigation, Disney Streaming cleared Plaintiff off all false charges made by Defendant Harris. However, Disney Streaming declined to investigate Defendant Harris for the false allegations made against Plaintiff.

46.

As direct and proximate cause of Defendants ongoing harassment, online bullying, and defamatory allegations, Plaintiff suffers from depression, with

symptoms including irritability, difficulty concentrating, and loss of sleep, have significantly impaired his ability to perform work responsibilities and attend social events.

## CAUSES OF ACTION

## COUNT I:

## COMMON LAW FRAUD IN THE INDUCEMENT

(Against Defendants Bianca Harris; Skinary App Inc., and The Skinary LLC)

### 47.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 46 into Count I as if fully set forth herein.

### 48.

Defendants fraudulently induced Plaintiff to serve as the co-founder of Skinary App for approximately 4 months, during which time Plaintiff provided valuable technological and coding services.

### 49.

However, contrary to their representations, Defendants never intended to honor the agreement or pay Plaintiff for any of the work he completed for the Defendants.

50.

Defendants' misrepresentations were material because they caused Plaintiff to produce more than 300 hours of valuable work product that they would not have otherwise been entitled to without paying for it.

51.

Plaintiff reasonably relied on Defendants' representations after having exercised necessary and reasonable diligence regarding their working relationship.

52.

As a direct result of Defendants' fraudulent acts, Plaintiff has been damaged and is continuing to suffer additional damages, in an amount to be proved at trial.

53.

The acts and conduct of Defendants as set forth above constitute willful misconduct and fraud and were done with an entire want of care such as to raise the presumption of conscious indifference to consequences. Accordingly, Plaintiff is entitled to recover punitive damages under O.C.G.A. § 51-12-5.1.

54.

Plaintiff alleges that the acts and conduct of the Defendants were done with specific intent to cause harm, such that the punitive damages Plaintiff is entitled to recover are not subject to any statutory limit. Plaintiff is entitled to recover punitive

damages in an amount to be determined by the jury, but in any event not less than $75,000 for Count 1 of the Complaint.

55.

The acts and conduct of Defendants constitute intentional wrongdoing, and Plaintiff is therefore entitled to recover attorney's fees and expenses of litigation, in an amount to be determined at trial.

COUNT II:

UNJUST ENRICHMENT

(Against Defendants Bianca Harris; Skinary App Inc., and The Skinary LLC)

56.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 55 into Count II as if fully set forth herein.

57.

There is no contract between Plaintiff and Defendants The Skinary LLC and Skinary App Inc. that covers the subject matter of this dispute.

58.

On, or around November 2019 through January 16, 2020, Plaintiff conferred a benefit on the Defendants.

18

59.

Plaintiff served as a full time Chief Technology Officer and co-founder of the Skinary Defendants. Plaintiff committed himself full time to this venture with the expectation that Plaintiff would have an ownership interest in the venture. Additionally, Plaintiff allowed Defendants to leverage his name, likeness, and credentials in pursuit of additional grant and angel investor funding.

60.

Defendants had knowledge of the benefit conferred on them by the Plaintiff.

61.

The Defendants accepted and retained the benefit that Plaintiff conferred on the Skinary Defendants.

62.

It is unjust to permit the Defendants to retain the benefit without compensating Plaintiff for it.

63.

Accordingly, Plaintiff demands judgment on Count II against the Defendants in an amount to be determined at trial, plus costs, interest, and reasonable attorneys' fees, and all other relief that the Court deems just and proper.

COUNT III:

QUANTUM MERUIT

(Against Defendants Bianca Harris; Skinary App Inc., and The Skinary LLC)

64.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 63 into Count III as if fully set forth herein.

65.

There is no contract between Plaintiff and Defendants The Skinary LLC and Skinary App Inc. that covers the subject matter of this dispute.

66.

On November 2019 through January 16, 2020, Plaintiff conferred a benefit on the Defendants.

67.

Defendants assented to the benefit conferred on the Skinary Defendants by Plaintiff.

68.

Defendants knew that Plaintiff was not providing his services gratuitously.

69.

Defendants knew that Plaintiff reasonably expected to be compensated for the services provided.

70.

On January 16, 2020, Defendant Harris abruptly and unexpectedly terminated Plaintiff after he had dedicated over 300 billable hours towards the beta launch.

71.

To date, Defendants have not paid Plaintiff a single dime for the reasonable value of the services provided.

72.

As a result of Defendant's failure to pay Plaintiff for the reasonable value of the services provided, Plaintiff has been damaged and suffered monetary losses in an amount exceeding $75,000, plus interest, costs, and expenses.

73.

Plaintiff demands judgment against Defendant on Count III for the reasonable value of the services provided in an amount to be determined at trial, plus costs, interest, reasonable attorneys' fees, and all other relief that the Court deems just and proper.

COUNT VI:

DEFAMATION REGARDING LINKEDIN POST

(Against Defendant Bianca Harris)

74.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 73 into Count VI as if fully set forth herein.

75.

Defendant Harris defamed Plaintiff when she knowingly, intentionally, and willfully published false, inaccurate and misleading information on LinkedIn regarding Plaintiff's role in co-founding Defendant Skinary App, Inc. *See* O.C.G.A. §§ 51-5-1, 51-5-4.

76.

Defendant Harris published false and defamatory statements concerning Plaintiff and had him as her primary subject.

77.

Defendant Harris' false and defamatory statements were intended as assertions of fact and impart what a reasonable reader would believe is factual.

78.

Defendant Harris' false and defamatory statements were designed to injure Plaintiff's reputation.

79.

By publishing such statements, Defendant Harris did cause harm to Plaintiff.

80.

Defendant Harris acted with actual malice. Her false and defamatory statements about Plaintiff were made with knowledge of their falsehood or reckless disregard for their truth or falsity.

81.

As a direct and proximate result of Defendant Harris' false and defamatory LinkedIn publication, Plaintiff has suffered presumed damages as well as actual reputational, emotional, and professional injuries.

82.

Defendant Harris is liable for the harm she caused by defaming Plaintiff in an amount greater than $75,000 to be determined at trial.

## COUNT V:

## DEFAMATION REGARDING FALSE EMPLOYEE RELATIONS

## REPORT TO DISNEY STREAMING

(Against Defendant Bianca Harris)

83.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 82 into Count V as if fully set forth herein.

84.

Defendant Harris defamed Plaintiff when she knowingly, intentionally, and willfully filed a formal employee complaint with Disney Streaming alleging that Plaintiff had harassed and physically assaulted her during the AfroTech conference in November 2022. *See* O.C.G.A. §§ 51-5-1, 51-5-4 and or *Johnson*, cited *supra*.

85.

On or around, January 10, 2023, Defendant Harris knowingly communicated false and defamatory statements to Plaintiff's current employer, Disney Streaming, alleging that Plaintiff physically assaulted her on two separate occasions during the 2022 AfroTech conference.

86.

Defendant Harris' false complaint went far beyond mere negligence to intentional misconduct. It was a malicious and calculated attempt to ruin Plaintiff's reputation, inflict emotional distress, and jeopardize his professional standing with their mutual employer, Disney Streaming. When Defendant Harris communicated these blatantly false allegations, it had far-reaching implications, not only damaging Plaintiff's professional reputation and mental health but also undermining the credibility of real victims of violence and assault.

87.

Defendant Harris knew or should have known that her communications were false and or misleading and knew or should have known such communications would be likely to cause harm, injury, embarrassment, shame and or would otherwise have or cause other trouble and damage to Plaintiff.

88.

Defendant Harris' false and defamatory statements were intended as assertions of fact and were designed to injure Plaintiff's reputation.

89.

By communicating such statements, Defendant Harris caused harm to Plaintiff.

90.

Defendant Harris acted with actual malice. Her false and defamatory statements about Plaintiff were made with knowledge of their falsehood or reckless disregard for their truth or falsity.

91.

As a direct and proximate result of Defendant Harris' false and defamatory communications to Disney Streaming, Plaintiff has suffered presumed damages as well as actual reputational, emotional, and professional injuries.

92.

Defendant Harris is liable for the harm she caused by defaming Plaintiff in an amount greater than $75,000 to be determined at trial.

93.

Defendant Harris' statements are also defamatory per se because they falsely impute to Plaintiff Black the commission of a criminal offense involving moral turpitude—specifically, in this instance, that Plaintiff physically assaulted Defendant Harris on two separate occasions at AfroTech in 2022. If true, these allegations would subject Plaintiff to the criminal charges of assault and battery based on her allegation that Plaintiff touched her offensively and without permission or other justification.

94.

Defendant Harris' statements severely prejudice Plaintiff with his current employer, Disney Streaming, by falsely accusing him of violent and criminal activity which undermines Plaintiff's ability to be held in high regard by his current employer.

95.

As a direct and proximate result of Defendant Harris' false statements, Plaintiff has suffered presumed damages as well as actual reputational, emotional, and professional injuries, and is liable for the harm she caused by defaming Plaintiff in an amount greater than $75,000 to be determined at trial.

COUNT VI:

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendant Bianca Harris)

96.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 –95 into Count VI as if fully set forth herein.

97.

Defendant Harris' conduct is outrageous and beyond all reasonable bounds of decency, where Defendant Harris published to her LinkedIn audiences content

portraying Plaintiff as dishonest and to their mutual employer, Defendant painted

Plaintiff as a violent criminal capable of inflicting physical harm upon women.

98.

Defendant Harris knew or should have known that the aforementioned

information and or communications were false and or misleading and knew or

should have known such communications would be likely to cause harm, injury,

embarrassment, shame and or would otherwise have or cause other trouble and

damage to Plaintiff.

99.

Plaintiff has experienced serious and severe emotional distress as a direct

and proximate result of Defendant Harris actions. Defendant's publication of

baseless false allegations caused Plaintiff extensive personal suffering, including

depression, anxiety, sleeplessness, inability to concentrate, irritability. It has also

caused irreparable damage to his professional reputation at Disney Streaming as

and his ability to conduct business in his current employment, including loss of

income.

100.

Plaintiff also suffers from depression, the symptoms of which have been

exacerbated by the consistently high levels of stress caused the reputational harm

caused by Defendant's false and defamatory statements, which have impaired his ability to conduct both work and social activities.

101.

Defendant Harris is liable for all general and special damages proximately resulting from the malicious and intentional infliction of emotional distress and resulting pain and suffering she caused Plaintiff in an amount greater than $75,000 to be determined at trial. See Georgia law allows for pain and suffering damages where the plaintiff suffers a physical injury *or pecuniary* loss. *Wells by Maihafer v. Ortho Pharm. Corp.,* 615 F.Supp. 262, 297 (N.D.Ga.1985) (citing *Westview Cemetery, Inc. v. Blanchard,* 234 Ga. 540, 216 S.E.2d 776 (1975)), *modified in part on other grounds,* 788 F.2d 741 (11th Cir.1986).

**WHEREFORE**, Plaintiff Terrell Black prays for the following:

(a)    trial by a twelve (12) person jury;

(b)    actual damages [specific amount to be proven at trial];

(c)    consequential damages in an amount to be determined at trial;

(d)    general damages in an amount to be determined at trial;

(e)    statutory damages for each statutory violation as described herein in an amount to be determined at trial;

(f)    exemplary/punitive damages in an amount to be determined

at trial;

(g)    reasonable attorney's fees, costs and expenses to the fullest

extent permitted by law;

(h)    interest as allowed by law; and

(i)    for any other such further relief as this Court or trier of fact

deems just and proper.

Respectfully submitted this 8th day of December, 2023.

/s/ Frederica Joy White
Frederica Joy White
GA Bar No. 753400

The White Legal Group LLC
1450 W Peachtree Street NW
#200 PMB 56702
Atlanta, Georgia 30309
(404) 394-8344
jwhite@thewhitelegalgroup.com

*Attorney for Plaintiff*
*Terrell Black*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the Northern District of Georgia via the CM/ECF system. Participants registered for electronic filing will automatically receive notification of this filing.

I further certify that I mailed via First-Class Mail, postage prepaid, a copy of the foregoing to the following parties who are not registered for electronic service via the CM/ECF system:

/s/ Frederica Joy White
Frederica Joy White
GA Bar No. 753400

*Attorney for Plaintiff*
*Terrell Black*
