IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TERREL BLACK, <br><br> Plaintiff, <br><br> v. <br><br> SKINARY APP, INC., et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:23-CV-5647-TWT |

**OPINION AND ORDER**

This is an action for fraud and unjust enrichment. It is before the Court on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 13] and the Plaintiff's Motion for Hearing on Case Status [Doc. 22]. As detailed below, the Defendants' Motion to Dismiss [Doc. 13] is GRANTED and the Plaintiff's Motion for Hearing on Case Status [Doc. 22] is DENIED as moot.

I.    **Background**

This case centers around the Plaintiff's allegation that the Defendants fraudulently induced the Plaintiff to perform work for them without paying for such services. Plaintiff Terrel Black is a natural person who resides in the state of Georgia. (First Am. Compl. ¶ 2). Defendant Skinary App Inc. was a corporation incorporated in Delaware with its principal place of business in California. (*Id.* ¶ 3; Harris Decl. ¶ 13). Defendant The Skinary LLC was a limited liability company under the laws of Massachusetts. (First Am. Compl. ¶ 4; Harris Decl. ¶ 12). Both of these Defendants are apparently dissolved or

defunct. Defendant Bianca Maxwell Harris is an individual domiciled in California and was the sole member of Defendant Skinary LLC. (*Id.* ¶ 5; Harris Decl. ¶ 12).

Defendant Harris and the Plaintiff met in November 2019 at AfroTech, a professional conference that took place in Oakland, California. (First Am. Compl. ¶ 12; Harris Decl. ¶ 6). After that initial meeting, they had conversations about the Plaintiff joining the Skinary App team and exchanged contracts. (First Am. Compl. ¶¶ 13-14; Harris Decl. ¶ 6). The Plaintiff never signed any contracts with the Defendants but began working as the Skinary App's Chief Technology Officer as early as November 2019. (First Am. Compl. ¶¶ 15, 17). Over the course of November 2019 to January 10, 2020, the Plaintiff worked more than 300 billable hours, which included building custom apps and android technology. (*Id.* ¶ 19). On or around January 16, 2020, Defendant Harris terminated the Plaintiff for the stated reason of "chang[ing] the direction of the company's team structure." (*Id.* ¶ 21; Harris Decl., Ex. 3 at 21).

In March 2020, Defendant Harris "began harassing Plaintiff" about an alleged breach of an NDA. (First Am. Compl. ¶ 23). Defendant Harris demanded that the Plaintiff remove all references from social media stating that he had been involved with Defendant Skinary App. (*Id.* ¶ 24). On November 15, 2022, Defendant Harris published a post on LinkedIn. (Harris Decl. ¶ 14). That post attached a screenshot of the Plaintiff's LinkedIn profile

and stated in part: "It is unfortunate to hear that someone has been taking credit for the work that was done by a much larger team over a course of 2 years, and ride the coattails of the massive risk that I took to create this as self-funded #founder, but we cannot control all narratives put forth. We can only thank those whose #teamworkmakesthedreamwork!" (First Am. Compl. ¶ 29). An internal recruiter at Disney Streaming notified the Plaintiff on or around December 10, 2022 about the post. (*Id.* ¶¶ 27). The Plaintiff took steps to have LinkedIn remove the post, which it did in late January 2023. (*Id.* ¶¶ 30, 32).

On January 10, 2023, legal counsel for Disney Streaming—the Plaintiff's current employer—contacted the Plaintiff about an employee complaint lodged against him. (*Id.* ¶ 38). The complaint alleged that the Plaintiff had physically assaulted the complainant at two separate public events associated with the 2022 AfroTech conference. (*Id.* ¶ 42). Upon information and belief, the Plaintiff alleges that Defendant Harris lodged the complaint when she learned that they worked at the same place and that she did so to prevent her current employer from learning about her former business dealings. (*Id.* ¶¶ 40-41). The Plaintiff participated in the internal investigation related to the complaint and was ultimately cleared of the charges made against him. (*Id.* ¶ 43-44). Disney Streaming declined to investigate Defendant Harris for making false accusations against the Plaintiff. (*Id.* ¶ 44).

3

Because of the Defendants' alleged harassment, bullying, and defamatory accusations, the Plaintiff asserts that he "suffers from depression, with symptoms including irritability, difficulty concentrating, and loss of sleep, [that] have [sic] significantly impaired his ability to perform work responsibilities and attend social events." (*Id.* ¶ 45).

Based on the above events, the Plaintiff filed suit against the Defendants. The Plaintiff asserts claims of fraud in the inducement, unjust enrichment, and quantum meruit arising out of the Defendants failure to pay for the 300 hours of work the Plaintiff performed. (*Id.* ¶¶ 46-72). He also asserts claims of defamation and intentional infliction of emotional distress stemming from the LinkedIn post and the workplace complaint. (*Id.*¶¶ 73-100). In response, the Defendants have moved to dismiss the First Amended Complaint for lack of personal jurisdiction.

## II.   Legal Standard

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th

Cir. 1988). Where the defendant contests the allegations of the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs. Corp.*, 987 F.3d at 1356.

### III. Discussion

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010) (citation omitted). These must be two separate inquiries under Georgia law. *Id.* at 1259 ("[T]he Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process."). The Court thus starts its analysis by examining Georgia's long-arm statute. That statute states in relevant part:[1]

---

[1] The three bases for personal jurisdiction reproduced below are the only ones that the Plaintiff alleges apply. (First Am. Compl. ¶ 8).

5

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. § 9-10-91. When deciding whether personal jurisdiction exists, the Court "must interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1258. The Georgia Supreme Court has given the long-arm statute a "literal construction" and rejected limitations that are inconsistent with such a reading. *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 673-76 (2005).

At bottom, "[n]either a party nor a trial court can circumvent the plain language of the statute, which according to the Supreme Court of Georgia requires that 'an out-of-state defendant must do certain acts *within the State of Georgia* before he can be subjected to personal jurisdiction.'" *Huggins v. Boyd*, 304 Ga. App. 563, 566 (2010) (citation omitted). There are simply no

6

allegations that show that the Defendants have done any of the required acts under the Georgia long-arm statute or are otherwise subject to personal jurisdiction in this Court. The First Amended Complaint concedes that the Defendants are not residents of Georgia. (First Am. Compl. ¶¶ 3-5). Nowhere in the First Amended Complaint does the Plaintiff allege where the events took place outside of a conclusory venue allegation that "a substantial part of the events giving rise to the claim occurred in and around Atlanta, Georgia." (*Id.* ¶ 11). While the Plaintiff does allege that he is currently a resident of Georgia, he does not state how long he has been a resident of Georgia. (*Id.* ¶¶ 2, 7).

Meanwhile, the Defendants have offered a declaration by Defendant Harris indicating that the Defendants have not engaged in the required conduct in Georgia. Defendant Harris is a California resident—and previously a Massachusetts resident—who has only traveled to Georgia once in the last five years. (Harris Decl. ¶¶ 2-3). That 24-hour trip was to attend a celebration as a guest of a neighbor, and the only thing Defendant Harris purchased while in Georgia was nail services. (*Id.*). Other than that, Defendant Harris states that she has not "(1) traveled to Georgia any other time or for any other reason, (2) transacted any business in Georgia, (3) entered into any agreements to transact business with anyone located in Georgia, and (4) knowingly availed [her]self to any resources, goods, or services located in Georgia." (*Id.* ¶ 4). During their respective existences, Defendant Harris was the sole member of

7

The Skinary LLC and the sole shareholder of Skinary App, Inc. (*Id.* ¶¶ 12-13). Those business entities were "never registered to do business in Georgia, did not transact any business in Georgia, and did not enter into any contracts with any residents of Georgia." (*Id.*). The Plaintiff has not offered any declarations or affidavits contesting these statements.

Based on the facts on the record, the Court concludes that the requirements of the Georgia long-arm statute have not been satisfied. For subsection (1) of the Georgia long-arm statute, even the Plaintiff concedes that the communications between him and the Defendants did not result in a formal contract between the parties. (First Am. Compl. ¶¶ 14-15).).[2] The First Amended Complaint does not provide any other basis for concluding that the Defendants transacted business in Georgia, especially in light of Defendant Harris's Declaration stating the contrary.

Under subsection (2), "Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident— defendant's conduct occurs at the place where defendant speaks into the

---

[2] Even if the communications did amount to an oral contract—which the Plaintiff does not allege—that still may not be enough under the long-arm statute. As one district court has stated, "the principle is clearly established in this state that the 'mere contracting with a Georgia resident is insufficient to extend the long arm of the Georgia courts.'" *Phillips v. Elec. Constructors of Am., Inc.*, 535 F. Supp. 1387, 1388 (M.D. Ga. 1982) (citations omitted). However, it is unclear what effect, if any, *Innovative Clinical & Consulting Services, LLC*, 279 Ga. at 672-76, has on this principle.

telephone or types and sends his email." *LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013) (citations omitted). Crucially, the First Amended Complaint does not state where the relevant events took place outside of a conclusory venue allegation. The Plaintiff does not allege that he was a Georgia resident for all relevant times and has not disputed Defendant Harris's Declaration that she resided in California and only visited Georgia once in the last five years for a short, unrelated trip. Furthermore, to the extent that the "tortious act" in question is defamation, the long-arm statute specifically excludes that from its reach. O.C.G.A. § 9-10-91(2) ("Commits a tortious act or omission within this state, *except as to a cause of action for defamation of character arising from the act*" (emphasis added)). Lastly, to the extent that the Plaintiff argues that the Defendants fraudulently induced him at their initial meeting, the alleged inducement occurred in California and therefore does not fall within this subsection of the Georgia long-arm statute. (Harris Decl. ¶ 6).

Finally, the Plaintiff does not assert any actions that fall within the ambit of subsection (3). There are no allegations stating that the Defendants "regularly do[] or solicit[] business…or derive[] substantial revenue" in Georgia. O.C.G.A. § 9-10-91(3). The only possible way that the Defendants fit under this subsection is if they have "engage[d] in any other persistent course of conduct…in this state." *Id.* The First Amended Complaint suffers from the

9

same shortcoming as above, namely that it does not state where any people or events were during the relevant times. That alone is sufficient reason to conclude that this subsection is not met.

Even assuming that the Plaintiff resided in Georgia for all relevant events, that would not appear to change the outcome. The Plaintiff still fails to allege any actions that the Defendants took in the state of Georgia. The mere fact that the effects of the Defendants' allegedly tortious actions were felt in Georgia is insufficient to assert personal jurisdiction over an out-of-state resident. *See Anderson v. Deas*, 279 Ga. App. 892, 893-94 (2006). If that were sufficient, then it is hard to imagine any legal harm done by a nonresident to a Georgia resident that would fall outside the long-arm statute. However, the Georgia Supreme Court rejected such a far-reaching interpretation of the long-arm statute. *See Innovative Clinical & Consulting Servs., LLC,* 279 Ga. at 675 ("[T]he fact that Georgians damaged by nonresidents are deprived of a forum in this State to the fullest extent permitted by due process is not the result of court decisions interpreting OCGA § 9–10–91(3) but the result of the plain and unambiguous language of OCGA § 9–10–91."). The plain language of the statute requires a "persistent course of conduct . . . in this state." O.C.G.A. § 9-10-91(3). The Plaintiff does not allege that any of the Defendants' *conduct* occurred in Georgia. The requirements of subsection (3) are not satisfied as a result. Because the Plaintiff's case has failed to meet any of the

10

requirements of the Georgia long-arm statute, it is dismissed for lack of personal jurisdiction over the Defendants.

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 13] is GRANTED and the Plaintiff's Motion for Hearing on Case Status [Doc. 22] is DENIED as moot. The Court directs the Clerk to close the case.

SO ORDERED, this   1st   day of August, 2024.

                                       THOMAS W. THRASH, JR.
                                       United States District Judge